Good morning, and may it please the court. Before this case, no court in the history of the republic had held that a person may be required to register as a lobbyist even though they neither receive nor spend any money in connection with influencing legislation. And the last time the Supreme Court answered this question in 1954, it held that the state's in, quote, who is being hired, who is putting up the money, and how much. Here the state has stipulated to facts that conclusively show that Ronald Calzone implicates none of these interests, and that is fatal to their argument. And it's not just Harris. I mean, Harris, of course, talked about the interest in those terms, but it also drew the line that what was trying to be accomplished here is to distinguish between, and I'm going to quote from the dissenters here, even though they agree with the majority on this point, that what you're trying to distinguish is between those who speak as though they represent the public, when in fact they are undisclosed agents of special groups. And every case to have considered Harris in the interim, whether it's the National Association of Manufacturers case in the D.C. Circuit, or rulings by the Supreme Courts of Kentucky, Washington, and New Jersey, have all articulated the interest as being about hired gun lobbyists who are representing others, not about individuals who show up pro bono. What's so special, counsel, about money, not so much money in terms of the exchange between legislators and lobbyists, which is obviously illegal, but you seem to concede that if a lobbyist is paid, that there could be regulation at that point. What's so special about the exchange of money at that level that makes that case different than this case? I think two things, Judge. The first is that, I mean, as the state has articulated its interest, it's the problem of corruption, which we've been hearing about this morning. And if there is no money anywhere in the system, then the likelihood of that quid pro quo arrangement simply never happens. Well, suppose Calzone is buying lunch for legislators. As I understood it, you say that they can't require reporting of that because he's not a paid lobbyist. That's not our position, Judge. Our position throughout this litigation has been if someone is spending money to influence legislation, they can be fairly captured as a lobbyist. And the state here has conceded that Mr. Calzone doesn't do anything like that. Well, I thought a lot of your argument was about whether he was paid or not. Well, it is, because that's the basis on which the Missouri Ethics Commission is attempting to regulate him. They're not claiming that he spends money to influence. He's not giving anything of value to legislators. If he were, this would be a different case. The MEC's theory is that Mr. Calzone has been designated by a non-profit with no money. So you say if he's designated by a non-profit with no money and gets no money for being the lobbyist for the non-profit, but he buys lunch for somebody, a legislator, then he's subject to regulation? Yes. That's our position. And that's also, I would point out, the position of the only case the MEC was able to find in a nationwide survey. They cite to the Smith case out of an intermediate court of appeals in California. And in that case, it's true that the appellant there had argued, you can't reach me because I'm uncompensated. But he was being regulated under a statute that said if you spend $5,000 trying to influence legislation every quarter, then we capture you. What if he works for a corporation? Not a non-profit, but a corporation and doesn't receive any money? If he's trying to get the business of the corporation, he does one for free. I think there again, the government simply doesn't have an interest. But don't you have a potential corruption interest, especially in a situation like that? And you even have it in a non-profit situation. The lobbyists could say, for example, well, if you vote for this particular piece of legislation, the corporation will do a favor for you in the future. No money is exchanged hands, but there's still a quid pro quo going on. Well, I think that'd be a different case because, of course, something of value is actually being injected into the situation. And again, the stipulations... Well, what if it's implicit? What if it's a wink and a nod situation? The legislator knows this lobbyist can produce for me when I need it because he's got this army of people behind him. And so when I need the volunteers next time around or whatever, he'll produce them if I go along with his request. Why isn't that enough of an interest, at least to require disclosure of who's doing what? Well, I think for two reasons. One is that every case to ever consider corruption has talked about money. I mean, that's the McDonald case, that's McCutcheon. The danger, when the court talks about quid pro quo corruption, it's talking about money for favors. I understand Your Honor's point to be, well, what if it's very far afield in a causal sense? But that sort of thinking, I think, is foreclosed by Buckley and by other cases. It's really an argument for universal registration. Under that theory, it's not really clear who would be outside of the statute. That's actually one of our major concerns here. But doesn't this line of questioning get at the representational nature of what's going on here in the sense that what makes this case different, at least what I anticipate Missouri might say, is you're representing somebody else. And so there's perhaps more of a chance of quid pro quo corruption in a situation like that. We need to regulate that. I think that is what they would say. Of course, I can't point to any case that would support them in that. Because I take the point, the problem is that without a monetary transaction that the regulator can look at, they're forced to engage in what's happened here. They're forced to put all of the effort on whether or not you've been designated. This is the way that plays out in practice. The MEC has taken numerous positions throughout this litigation as to how exactly Mr. Calzone was designated. They've said, well, because he's the president, he's self-designated. They've said it's because you fill in your name on the form when you testify you've designated. They've said it's because you're a registered agent, though they've now backed away from that here on appeal. The problem with not having a monetary trigger in practice is the vagueness problem. It's a problem that no one can know in advance whether they've tripped over this enforcement line. And because the MEC enforces by allowing people to file conclusory complaints and then have a statutory obligation to investigate. But you do know. You know that if you're representing another party, whether it be a person, a corporation, a nonprofit, or whatever, you could run afoul of this particular provision if you don't yet register. So what's vague about the statute? What's vague is that no one on these facts knows whether they've been designated or not. I mean, think of it this way, Your Honor. When Mr. Calzone goes to Jefferson City, he's either a lobbyist before he gets there, or he's a lobbyist by virtue of identifying himself in some way once he gets there. And the MEC has taken positions on both sides of that. They've said, well, no, he's so closely connected to this nonprofit that is basically a website in which they've stipulated has no money that, you know, whatever he does is representing them. And then they've said, no, you don't have to worry about that because since he doesn't identify himself as being a director of Missouri First now, we're not going to enforce against him. Let me ask you this, though, and you can tell me that the state doesn't raise this as an interest, but I want to hear what your answer would be anyways, which is one of the things that's interesting about this is the representational interest. And we talked about that. Is there some sort of interest of the state in regulating that representational relationship, sort of like the state or state Supreme Court would regulate lawyers? In other words, you want to make sure that there's nothing unethical going on either in the relationship between the lobbyist and his or her or its client or the lobbyist and legislators. I think, I think you're right that they haven't raised that point, Your Honor. But my response sitting here would be you're conflating two different types of people. You're conflating a closely regulated class of professionals that have certain duties, myself, Your Honor, with just citizens who are trying to petition their government. And that's the problem here. The problem is they're trying to take someone who's just a citizen trying to petition their government and turn them into a professional lobbyist and make them file monthly reports and make them terminate and say that they no longer have representations and subject them to this incredibly burdensome enforcement process as though they were the sort of people, you know, going back to the Swanson opinion, you know, who can file, hire lawyers who aren't intimidated by this process, who aren't going to say it's just not worthwhile. Lawyers do that all the time, including, as Your Honor points out, in pro bono cases. That's because they're professional lawyers. They've been certified. They've made enormous investments to get there. There are people like that who are professional lobbyists. And it's fine for the Missouri authorities to regulate those people. The problem is the, the, the problem is trying to convert Mr. Calzone into one of those people. So, so the state in response relies mostly on campaign finance cases. We think the problem with that is, is obvious from the fact finance is in the title. But I would point this, this court to its own decision in the Tooker case where a panel of this court held that a report which didn't include contributions or expenditures reflected a situation where the government's at best. This is precisely such a situation. The, the forms that the, the MVC would like Mr. Calzone to file will include essentially nothing but his name and the fact that he is a lobbyist. He doesn't have a lobbyist principle because no one pays him. Is there a place where he has to disclose that he made no payments? Well, I, I think that's their point, Your Honor, is that. Well, is that on the form? There is, yes. There is. So they would know that this person is a representative lobbyist if we get by the designated question? If Your Honor were to get past the designated question. They would know, okay, he's designated as a lobbyist, he's lobbying, and, and he's told us under oath or whatever that he has not spent any money? With one slight problem, Your Honor, which is that because the, the statute defines, and this goes to our statutory interpretation point in case you do find vagueness. The statute defines a lobbyist principle, you know, the person you list as the person you're lobbying for as someone who compensates or otherwise pays as lobbyists. So the form you would have would be Ron's name and just a blank. It's literally a name calling exercise. All it is is Ron Calzone is a lobbyist and then walk away. That sort of information could mean one of two things. It could mean nothing or it could be that the state's trying to prove a negative. And to the extent the state's trying to prove a negative by forcing anyone to register so they know whether you're spending money, I would argue that's simply too far afield. It's not a, it's not an appropriate fit under either strict or exacting scrutiny. Question. Of course, Judge. The district court, in its opinion, when it got to the examination of this issue about the statute's use of the term designate, it says that your challenge with respect to that is a facial challenge to the statute. Is that, was the district court correct? Did it correctly evaluate your claim and the premise for your claim? In the sense that vagueness challenges are facial, yes. Of course, we also have an as-applied challenge to the nature of Mr. Calzone's activity under the first amendment. Does that, does that go to the designate? In other words, do we have two aspects of this? One is the, one has to do with the first amendment piece of this and then secondly is vagueness with respect to the word designate? I think that's correct, Your Honor. I mean, the first, the first claim is the first amendment requires, in our view, strict scrutiny in this context. In their view, exacting scrutiny. But neither, either standard a close fit between what the government's demanding and its interest. And here the interest under a first amendment analysis simply doesn't exist because there's no money in the system. And that's, we've cited those cases. And secondly, that because they've taken money out of the system, because that economic moment at which you form the agency relationship doesn't exist and they can't target it, the word designate is doing all the work in the statute and now they need it in too broad a way. What I'm getting to on the facial, the question about the facial challenge on the word designate isn't, isn't the, most of the time, isn't the designation going to be clear? Doesn't that word suffice very well? Because the person's going to be appointed by, by a board or elected by the group or designated by the group to conduct these activities? I think not. And I, I think that's the real danger here is that once there's no longer a financial component, anytime anyone has a lobbying day, anytime the Boy Scouts or legislators, which happens all the time, and we put in examples of that, we've now got all those people operating at their peril because have they been designated by the Sierra Club? Have the, the dental hygienists who we put into the record who have received training from that organization, have they been designated? Probably. But I don't think a person of ordinary intelligence or infirmness is going to know that when they sign up for the lobby day for an organization they support, even though they're not paid, even though they received nothing for doing so, except, you know, a sense of civic pride, that they've now run afoul of the MEC's interpretation of the statute. Is that an over-breath problem or a void for vagueness problem? I mean, if you were to, if the statute were to cover people doing lobbying days, would that be, that seems like an over-breath problem. It goes too far, not a void for vagueness problem. Well, I think it's, I think it's both, Your Honor, in the sense that, again, the MEC hasn't been able to point to a consistent theory of how people are designated, which is why, again, Mr. Calzone remains at peril, because it's not clear from this record whether the MEC thinks, you're the president of an organization, you're lobbying whenever you talk to people, or if you sign in on a form, now you're lobbying, or, you know, this sort of lack of clarity goes towards both vagueness and over-breath. Why does Mr. Calzone prefer to appear in the legislature and say he's appearing on behalf of Missouri First rather than just petitioning his government as an individual? I'm not sure those are the facts, Your Honor. The stipulated facts are that he identifies himself as a director of Missouri First, and I don't want to speak to his subjective motivation just like I wouldn't want to speak to the subjective motivation of the Boy Scouts or Sierra Club members. I also see my time as expired. So the record doesn't show why he identifies himself as a director? I mean, I imagine he wants to exercise an associate of liberty. I'd like to reserve my remaining seconds for rebuttal. You may. Very well. Thank you for your argument. Ms. Blake, we'll hear from you. I might want to adjust the podium goes up and down, too, I think, on the right side there. There's a button on the right side. There you go. May it please the Court. I'd like to begin by going straight to Judge Strauss' first question, which is, what's so special about paying the lobbyist? In terms of the state interest in transparency and lobbying interactions, there is nothing special about the lobbyist being paid or whether the lobbyist is pro bono. The state interest in transparency is the same in both cases. Is that true, even if nothing is exchanged of value, either money or some sort of promise or favor, if it's just merely a citizen going up, even on behalf of another, and lobbying on behalf of a nonprofit or a corporation or whatever representational interest you want to put there? Yes. Even assuming that the legislator doesn't receive anything of value from the lobbyist, the public still has an interest in knowing who is representing other people to interact with the lobbyist. If this law weren't in place and the people didn't know, you would have lobbyists going up and there would be no way of knowing who their lobbying principal was, the contact information for that, or even if there was a lobbying principal. Maybe the legislator would know, but the public would not have any opportunity to know. Well, this may bleed into the last argument, but these cases overlap to some degree, which is an anonymous speech. Why doesn't it extend here? Why does the public have a right to know if a citizen, if there's a lobbying day or whatever, and a citizen is lobbying on behalf of another corporation or individual? Perhaps you're referring to some of Justice Thomas' opinions as well in this area. Frankly, as far as precedent is concerned, as it affects the Eighth Circuit, disclosure has been recognized in the Supreme Court's cases, many of them as a valid government interest that satisfies exacting scrutiny and overcomes that nature of an interest in anonymous speech from McIntyre in those cases. That's true, but don't the disclosure precedents just run to exchanges of money, at least the ones that the Supreme Court has decided? Maybe I'm wrong about that, and if I am, please correct me. I think for the Supreme Court precedent, largely so. That's why we mentioned this is a case that we think is first of impression for this Court as applied to lobbying. What I would do instead, then, would be to direct this Court to its precedent in Swanson, where this Court ruled en banc that exacting scrutiny applies to disclosure laws. And if you look at that case, this Court did not make a distinction among different kinds of political speech, but merely said when the law is a disclosure law, it is subject to exacting scrutiny. And we think that controls this case. So how would you articulate the state's interest in requiring the disclosure if the lobbyist doesn't pay any money or give anything of value to the legislators? So the state's interest in regulating even pro bono lobbyists who... No, I'm not on the pro bono versus paid. I'm on the question. I thought that was a lot of what Mr. Calzone was arguing, but today he says no. It really comes down to whether he buys lunch for the lobbyist or not. If he did make any payment to the lobbyist, then he seems to concede he would have to register and report if he were designated. But he says because he doesn't spend any money either, there's no interest of the state or legitimate interest in requiring regulation. So that's what I was asking about. Right. So there's a few points in response to that. Just to start by clarifying the issue, if you look at the definition of a legislative lobbyist who's required to register and report, that definition has four sections, A, B, C, and D. C is the one Mr. Calzone's challenging here, whether it's designated. The other sections, A, B, and D, talk about you have to register if you're giving things of value to the legislator. So I think that helps explain that he's sort of got two reasons why he thinks he's special compared to other lobbyists. One is he's not buying lunch and giving money to other legislators. Two, his organization that has him in the post of president isn't paying him to be their president, et cetera. I understood his brief to say that both of these points were salient to his claim. As to the government's interest, as to each point, let me take them one by one. Well, I'm asking about the first, the payment to the legislator. Go ahead, however you want to handle it. So the government has an interest in regulating any lobbyist who does payments to legislators in the course of lobbying for legislative action. And that, we think, is squarely controlled by Harris, which talks about the federal laws that says if a lobbyist buys lunch, gives World Series tickets, et cetera, there's a sufficient interest in averting the factor appearance of corruption by having transparency of those interactions. Right, but what if he doesn't pay anything? Right, and that's actually- What's the interest then? Right, so that's actually about 75% of Missouri's 900 to 1,000 registered lobbyists. Nearly all of them check the non-expenditure box when they do their reports with the Ethics Commission. And in that case, that gets to the representational interest that Judge Strauss was talking about, where it's important to have transparency to know who is behind the lobbyists so that the public understands on whose behalf these interactions are made with the legislature. We think that Sunshine's the best disinfectant in that area. So what's the risk of corrupt- Harris, of course, talks about who is hiring them and so forth. An unpaid person wouldn't implicate those interests. So what is being disinfected? I think it's averting the potential of corruption, averting the specter of corruption, as well as- and we think this is a separate freestanding interest of promoting transparency as a public good in itself, as a value judgment in itself by the people, that transparency is a sufficient government interest. Consider a hypothetical where you have a former powerful legislator goes into lobbying, says, I'm going to do it pro bono right away. But lo and behold, on behalf of my client, the state Republican or Democratic Party, if there's no transparency interest in disclosing that, and he's unpaid and he's not actually buying lunches or World Series tickets or anything, the public would have no way of knowing on whose behalf he's investing their own money to, you know, under this person's sway, might lead all of these to put pressure on the legislator in particular actions. With transparency and disclosure, the public has a way of knowing this form of influence on its legislature. That information interest- Well, I think then you are saying it's also an anti-corruption interest, it's not just transparency, because you're worried that even if he's unpaid, there might ultimately be some corruption. Right, in our brief- As an unpaid person, I think what you just said is the unpaid person could somehow produce benefits to the legislator. Right, and that's why our brief talked about both interests being at work here. They're mutually reinforcing interest, just as in the last case, that transparency is one of the best ways to avoid corruption. Why do you care about transparency to avert the specter of corruption? When I asked counsel what kind of challenge he was bringing with respect to this issue about the word designate, in his answer, he kind of moved over and brought in this scenario of the Boy Scouts or a chapter of the Sierra Club, or I guess it could be a local parent-teacher organization falling under the purview of this. Is that kind of objection, is that within the bounds of this lawsuit to come, is that a different challenge? And what do you say about that, that issue that he raises? All right, so as your questions to him recognize, that is a different lawsuit because that's not the standard at which this court evaluates a facial vagueness challenge. The standards that apply are whether the main instance of the application of the statute is clear, even if there might be marginal cases where doubts arise. Here, the main application is clear. And for that reason, concerns about whether the law simply goes too far as a substantive First Amendment matter would be relegated to a separate over-breath challenge. But does the statute cover a person who goes up for lobbying day at the behest of the Boy Scouts or the Sierra Club? Do you have a view on that? I think it's important to look at what the relationship would be like in this case. So if a group like the Sierra Club, for example, they use, simply says, hey, all of our members, let's go up together. Then the question is, do they understand themselves to be representing the Sierra Club, designated by the Sierra Club to speak for the Sierra Club, or not? If they're like, hey, I'm just Joe Schmoe, I'm here, there's a lot of other Sierra Club members here, I care about this, but they're not representing and designated by the Sierra Club to speak for them, then I think an ordinary member of the public would understand they're not representing them as such. But if the Sierra Club was like, hey, here's my vice president for government relations, my president, my registered agent, and a member of the board of directors of the Sierra Club, I think you'd pretty much understand that person would be a lobbyist subject to this law. Is it emailed to its membership? So you send out an email and you say, we're going up to the Capitol on such and such date, go up there and represent the Sierra Club's interest in having a particular piece of legislation defeated or whatever, is that sufficient to bring them within the coverage of the statute? You know, it could be potentially on the facts of each case. And again, under the standards for evaluating a vagueness challenge, even if there's a marginal case like that where doubts arise, the main category of what is considered a lobbying interaction is so clear that that would have to wait for a separate lawsuit. And, you know, as I understand this, in addition to some reporting, filling out some forms, you have to pay, someone that falls under this has to pay a $10 fee, is that right? Yes. I think there's an extra dollar if you pay with a credit card. Is it just, isn't there just something offensive in that in requiring a citizen to pay any amount of money in order to express their view to the legislature for an informally constituted group like a parent-teacher organization? If they want to make their voice heard on an issue that has to do with education and they have to pay to do that, they have to pay $10 or more to do that, isn't that just a problem with that? Well, I think that's why the First Amendment applies and exacting scrutiny does apply. We're not saying there's no burden, merely that once you identify the First Amendment burden, you then apply the proper tiers of scrutiny. And under Swanson, exacting scrutiny is the proper level to value a disclosure law. And the Supreme Court's been clear that under exacting scrutiny, even a significant burden on First Amendment interests will be if it passes that level of review. It's not that we're saying that the First Amendment just per se doesn't apply and the legislature can do whatever it wants to regulate lobbyists. And certainly this case is very different from where the fit would be different and exacting scrutiny might fail. So for example, all the cases cited in their brief about prior restraints on lobbyists, you can't speak at all under a revolving door statute, various blackout periods. That fit might raise a serious question and very well in that case it wouldn't be a disclosure law but a substantive law subject to strict scrutiny, in which case it's very unlikely the law would pass. But under exacting scrutiny, here the fit is very relevant to whether the First Amendment burden is justified under exacting scrutiny. You need a substantial relation between the disclosure requirement, sufficiently important government interest, or looking whether it's closely drawn relative to the First Amendment burden. And here, a two-minute online form with a box to check if you've got no expenditures and a very modest $10 fee does advance that sufficient interest. And I think the small amount of the fee reflects the fact that the legislature understood this would sweep in quite a few representative relationships. But, you know, it's also important to remember that the state interest in transparency and regulating government relationships has been recognized as compelling interest in the previous cases considering paid lobbyists, Harris, this Court's decisions in Kelly, the NRA case as well. And so we do think that that's also an important part of measuring the fit is the strength of the government interest in transparency and lobbying relationships and the importance to the public of transparency into an area that historically has had the fact or appearance of real corruption concerns. I want to step back for just a minute and ask a really basic question, which is we've got a facial challenge here, the void for vagueness challenge, and I want to hear from opposing counsel as well. We don't have an overbreath challenge, as we discussed. Is the basic First Amendment challenge where we're applying exacting scrutiny, is there a facial and an as-applied challenge here, or just one or the other? I understand that their substantive First Amendment challenge is as applied to Mr. Calzone. As we note in their briefs, he appears to concede the validity of the transparency interest as applied to your run-of-the-mill lobbyists, but he says I'm somehow special from these other lobbyists who are often pro bono and often, as you mentioned, 75 percent non-expenditure-based lobbyists. So I don't see it as facial in the entirety, but merely as applied to him that he challenges that substantively. The vagueness one, of course, as Judge Shepard recognized, is a facial challenge. Unless this Court has no further questions, we ask this Court to uphold the law because exacting scrutiny only requires a proportional fit and a law that's clear enough to apply to most cases, which Missouri's law satisfies. Very well. Thank you for your argument. Your Honors, very briefly, on the governmental interest... Mr. Dickerson, you may proceed. My apologies, Judge. No need to apologize. Go ahead. On the governmental interest, the State is relying entirely upon hypotheticals to develop an interest that's never been recognized by a court, and we would argue that Shrink Missouri forecloses that approach, absent evidence that somehow uncompensated people raise the same issues that have been recognized in cases which are explicitly about the spending and receiving of money to lobby. And there's simply nothing like that in the record. Is the nature of your challenge as applied or facial aside from the void for vagueness challenge? On the First Amendment question? Yes. It is as applied, but it's as applied to those who are similarly situated, meaning those who are not compensated. Thank you. That's what I thought you were arguing, that it shouldn't apply to anybody who's not compensated, but then the first time up, you seem to be saying, no, no, as soon as you spend any money, then you can be regulated. I think the facts of this case are if someone does neither, there's no governmental interest. Yeah, but it's a quite different theory, whether it's based on the fact that he's unpaid or the fact that he's not spending. Well, at this point, I think it's almost a question of standing. The State's theory of about being selected by someone to lobby for them. And we've explained why we read the statute differently. But they have not attempted to enforce on the other basis. So just finally, we think the burdens here are indistinguishable from Swanson. And thank you very much. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course.